1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,            No.  1:21-cr-00095-ADA-BAM-4

12            Plaintiff,                 ORDER DENYING DEFENDANT'S
                                         MOTION FOR RECONSIDERATION OF
13       v.                              MAGISTRATE JUDGE'S DISCOVERY
                                         ORDER
14  LIZETTE MENDEZ,
                                         (ECF No. 226)
15            Defendant.
                                         ORDER GRANTING DEFENDANT'S
16                                       MOTION TO REVOKE THE MAGISTRATE
                                         JUDGE'S PRETRIAL DETENTION ORDER
17
                                         (ECF No. 205)
18

19

20                      **I.**

21              **Procedural and Factual Background**

22       Defendant Lizette Mendez faces one count of conspiracy to distribute and to possess with

23  intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1) and

24  one count of possession with intent to distribute methamphetamine and fentanyl in violation of 21

25  U.S.C. § 841(a)(1).  (ECF No. 74 at 1–2.)  After her arrest on March 29, 2021, Ms. Mendez

26  appeared before a Magistrate Judge, who granted pretrial release subject to certain conditions.

27  (ECF No. 28.)  As relevant here, Ms. Mendez's conditions of release included the requirements

28  that she (1) report any law enforcement contacts to her Pretrial Services officer within twenty-

                                    1

four hours; (2) "refrain from . . . any use of a narcotic drug or other controlled substance without a prescription by a licensed medical practitioner;" and (3) "participate in a program of medical or psychiatric treatment including treatment for drug or alcohol dependency." (ECF No. 42 at 2.)

On May 31, 2023, Pretrial Services filed a petition alleging that Ms. Mendez failed to attend mental health counseling on March 21, 2023, April 13, 2023, April 25, 2023, and May 1, 2023. (ECF No. 193.) The petition also alleged that Ms. Mendez received a speeding ticket on April 8, 2023, but did not report her contact with law enforcement within twenty-four hours. (*Id.*) Finally, the petition alleged that a drug test on May 20, 2023 indicated that Ms. Mendez tested positive for the presence of cannabinoids. (*Id.*) Pretrial Services also submitted a report to the Court with additional background on Ms. Mendez's violations. The report states that Ms. Mendez tested positive for cannabinoids on three prior occasions – August 16, 2021, April 25, 2022, and February 17, 2023. In each instance, Ms. Mendez was evasive and dishonest with Pretrial Services, only admitting to using marijuana when confronted with the positive test results. The report also indicates that, in addition to the mental health counseling sessions that Ms. Mendez missed, she also failed to attend mandatory substance abuse counseling on January 27, 2021, February 17, 2021, April 13, 2021, May 27, 2021, June 29, 2021, August 24, 2021, March 17, 2022, and April 21, 2022. After each of her violations, Pretrial Services spoke with Ms. Mendez and reiterated the importance of abiding by her release conditions.

At a hearing on June 6, 2023, Ms. Mendez entered a denial to the allegations, and the Magistrate Judge ordered her detained temporarily. (ECF No. 198.) At a subsequent hearing on June 8, 2023, Ms. Mendez admitted that she failed to participate in mental health counseling on March 21, 2023 and May 1, 2023 and that she tested positive for cannabinoids on May 20, 2023. (ECF No. 204 at 5.) The Magistrate Judge then ordered Ms. Mendez detained pending disposition of her case pursuant to 18 U.S.C. § 3148(b)(2)(A)–(B), finding that she posed both a flight risk and a danger to the community and that she was unlikely to abide by any conditions of release. (ECF No. 202.) On June 15, 2023, Ms. Mendez filed a motion to revoke the Magistrate Judge's detention order, pursuant to 18 U.S.C. § 3145(b). The Government filed its opposition on

1   July 10, 2023,[1] and Ms. Mendez replied that same day.  (ECF Nos. 223, 225.)

2          On the same day she filed her motion to revoke, Ms. Mendez also filed a motion for

3   discovery, seeking information about the Government's policies and practices regarding the

4   prosecution, or non-prosecution, of marijuana offenses in the Eastern District of California ("the

5   Prosecution Guidelines").  (ECF No. 206.)  The Magistrate Judge denied the motion on July 10,

6   2023.  (ECF No. 222.)  Ms. Mendez then timely filed a motion for reconsideration on July 14,

7   2023, and the Government filed its opposition on July 28, 2023.  (ECF Nos. 226, 232.)  Ms.

8   Mendez replied on August 2, 2023.  (ECF No. 233.)  Because Ms. Mendez asserts that the

9   resolution of her motion for reconsideration may impact the result of the motion to revoke, the

10  Court scheduled a hearing on both motions for August 8, 2023.  Kevin Rooney appeared for Ms.

11  Mendez and Arin Heinz appeared for the Government.

12                                          **II.**

13                              **Motion for Reconsideration**

14  **A.      Legal Standard**

15         A district court will not set aside a magistrate judge's order on a non-dispositive matter

16  unless that order is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); E.D. Cal. R.

17  303(f).  The "clearly erroneous" standard applies to factual determinations and requires reversal

18  when "the district court is left with the definite and firm conviction that a mistake has been

19  made."  *Comput. Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 983 (quoting *Weeks v.*

20  *Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)).  On the other hand, "the

21  district court should exercise its independent judgment with respect to a magistrate judge's legal

22  conclusions."[2]  *Id.*

23

---

24  [1] The Government filed its original opposition on June 6, 2023, which it erroneously categorized as a Motion to

25  Revoke.  (ECF No. 218.)  Upon receiving this filing, the Clerk ordered the Government to re-file the document and categorize it as an opposition.  (ECF No. 221.)

26  [2] It is unclear the extent to which the "contrary to law" standard differs from de novo review.  *See SMC Networks,*
    *Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372, at *2 (C.D. Cal. Mar. 15, 2013) (comparing rulings from different

27  courts).  "At a minimum, it is less deferential than the 'clearly erroneous' standard applicable to the magistrate judge's factual determinations and acts of discretion."  *Comput. Econ., Inc.*, 50 F. Supp. 2d at 983 n.2.  As this order

28  will make clear, however, the Court would uphold the Magistrate Judge's ruling under either a contrary to law or de novo standard of review.

In criminal cases, due process requires the government to disclose *Brady* material –

"evidence that is both favorable to the accused and 'material either to guilt or to punishment.'"

*United States v. Bagley*, 473 U.S. 667, 674 (1985) (quoting *Brady v. Maryland*, 373 U.S. 83, 87

(1963)).  Evidence is favorable when it "would tend to call the government's case into doubt."

*Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013).  Evidence is material if its introduction "could

reasonably be taken to put the whole case in such a different light as to undermine confidence in

the verdict."  *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).  "The mere possibility that an item of

undisclosed information might have helped the defense, or might have affected the outcome of

the trial, does not establish 'materiality' in the constitutional sense."  *United States v. Agurs*, 427

U.S. 97, 109–10 (1976).[3]

Whether evidence is subject to disclosure under *Brady* is a question of law.  *See United*

*States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013).

**B.     Discussion**

Ms. Mendez argues that the Prosecution Guidelines are material under *Brady* because they

would (1) affect the outcome of her motion to revoke the Magistrate Judge's pretrial detention

order, and (2) bear on sentencing.  (*See* ECF No. 226 at 4.)  The Magistrate Judge disagreed,

holding that pretrial detention was collateral to the issue of sentencing for the charged offense and

that the Prosecution Guidelines would not be material to sentencing on charges that do not

involve marijuana use or possession.  *United States v. Mendez*, No. 21-cr-00095, 2023 WL

4424554, at *3–*4 (E.D. Cal. Jul. 10, 2023).  Ms. Mendez contends that the Magistrate Judge

---

[3] Ms. Mendez argues that determining materiality under *Brady* differs depending on whether an appellate court is reviewing a conviction or a district court is assessing a pretrial motion to compel discovery.  (ECF No. 233.)  Though she does not cite any case law to support this proposition, Ms. Mendez appears to invoke *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999).  There, the district court held that, prior to trial, "the government is obligated to disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case."  *Id.* at 1199.  The Ninth Circuit has urged prosecutors to consider *Sudikoff*'s analysis when assessing what materials to disclose prior to trial.  *See United States v. Price*, 566 F.3d 900, 913 n.13 (9th Cir. 2009). It is not clear, however, that this approval established a new standard of materiality for pretrial discovery.  *United States v. Lischewski*, No. 18-cr-00203-EMC-1, 2019 WL 2211328, at *2 (N.D. Cal. May 22, 2019) ("[I]t is not clear that the Court must apply the post-trial materiality standard when reviewing a motion to compel *Brady* material."); *but see United States v. Lacey*, No. CR-18-00422-001-PHX-SMB, 2020 WL 3488615, at *5 (D. Ariz. Jun. 26, 2020) ("[T]his nod to *Sudikoff* does not obviate a district court's mandate to follow *settled* Ninth Circuit law.").  As discussed below, even if a more lenient standard applied in this case, *Brady* would still not require disclosure of the Prosecution Guidelines.

4

1     erred on two points. First, she posits that the Prosecution Guidelines are relevant and material to

2     sentencing because they demonstrate that Ms. Mendez suffered pretrial incarceration for conduct

3     that the Government does not prosecute in this district. (ECF No. 226 at 11.) By failing to

4     appreciate how erroneous pretrial detention might alleviate a subsequent sentence, she argues, the

5     Magistrate Judge improperly limited *Brady*'s scope. (*See id.* at 14.) Second, Ms. Mendez

6     contends that the Magistrate Judge failed to address her argument that *Brady* requires disclosure

7     of evidence relevant to the imposition of pretrial detention. (*Id.* at 15.)

8         First, Ms. Mendez's second contention is without merit. Her conclusion appears to derive

9     from a mistaken belief that *Brady* entitles her to all "information in the government's possession

10     that is relevant and helpful to the defense." (ECF No. 226 at 10.) *Brady* disclosure requirements,

11     however, apply to evidence that is "material either to *guilt* or to *punishment*." *Brady*, 373 U.S. at

12     87 (emphasis added); *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no

13     general constitutional right to discovery in a criminal case, and Brady did not create one . . . .").

14     Ms. Mendez nowhere cites to legal authority for the proposition that *Brady* applies in the context

15     of pretrial detention proceedings under the Bail Reform Act. The Magistrate Judge's rejection of

16     the "helpful to the defense" standard, therefore, adequately disposed of Ms. Mendez's argument.

17     *See Mendez,* 2023 WL 424554, at *4.

18         Second, Ms. Mendez's theory of why the Prosecution Guidelines are material to

19     sentencing is unpersuasive. The thrust of her argument is that the Magistrate Judge premised Ms.

20     Mendez's detention on the fact that she violated federal laws prohibiting marijuana possession.

21     (ECF No. 226 at 4–5, 12 n.4, 16.) This assertion, however, ignores the language in the detention

22     order. The reason for revoking Ms. Mendez's detention was not her marijuana use per se, but

23     rather the fact that she violated multiple terms of her pretrial release, including the condition that

24     she not consume controlled substances, and lied about it. *See United States v. Mendez*, No. 21-cr-

25     00095-ADA-BAM, 2023 WL 3931720, at * (E.D. Cal. Jun. 9, 2023) ("[T]he Court does find the

26     Defendant's repeated violations of the conditions of pretrial release present a danger to persons in

27     the community and establish a flight risk . . . .").[4] Whether or not the Government has a policy to

28     

---

[4] The Magistrate Judge did make a probable cause finding that Ms. Mendez's marijuana consumption constituted a

1  prosecute marijuana possession offenses is irrelevant to the fact that Ms. Mendez admitted to

2  numerous violations of her pretrial release conditions.  The Bail Reform Act does not constrain

3  courts to prohibiting only illegal conduct as a condition of pretrial release and, in fact, explicitly

4  lists refraining from the use of narcotics as an appropriate condition.  *See* 18 U.S.C. §

5  3142(c)(1)(B)(ix).  Moreover, the decision to prosecute certain offenses, or not, rests entirely

6  within the Government's discretion.  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

7  Refusing to prosecute certain offenses does not erase their status as criminal prohibitions.  Ms.

8  Mendez has provided no authority to the contrary.

9      Accordingly, the Court finds that the Magistrate Judge did not err in concluding that the

10 Prosecution Guidelines are not *Brady* material.

11                                        **III.**

12                        **Motion to Revoke Detention Order**

13 **A.     Legal Standard**

14     "In our society liberty is the norm, and detention prior to trial or without trial is the

15 carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Consequently,

16 courts may detain a defendant prior to trial only when "no condition or combination of conditions

17 will reasonably assure the appearance of the person as required and the safety of any other person

18 and the community."  18 U.S.C. 3142(b); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th

19 Cir. 2008).  If the court determines that there are conditions that will reasonably assure the

20 defendant's appearance and the safety of the community, it must release the defendant from

21 pretrial detention under the least restrictive of those conditions.  *United States v. Motamedi*, 767

22 F.2d 1403, 1405 (9th Cir. 1985).  If a defendant violates one or more of these conditions, the

23 government may move for the court to revoke the defendant's release.  *See* 18 U.S.C. § 3148(b).

24 A court must revoke a defendant's pretrial release when it, after a hearing,

25 ///

26 ///

27

28 
federal crime.  *See Mendez*, 2023 WL 3931720, at *4 n.2.  This finding, however, was not necessary to the revocation order and appeared only in a footnote.

1    (1) finds that there is –

2            (A) probable cause to believe that the person has committed
                 a Federal, State, or local crime while on release; or
3
             (B) clear and convincing evidence that the person has
4                violated any other condition of release; and

5    (2) finds that –

6            (A) based on the factors set forth in section 3142(g) of this
                 title, there is no condition or combination of
7                conditions of release that will assure that the person will
                 not flee or pose a danger to the safety of any other person
8                or the community; or

9            (B) the person is unlikely to abide by any condition or
                 combination of conditions of release.
10

11   18 U.S.C. § 3148(b)(1)–(2).[5]  The government's burden at the second step of this analysis –

12   demonstrating that no conditions of release will ensure public safety and the defendant's return to

13   court, or that the defendant will not abide by conditions of release – is proof by a preponderance

14   of the evidence.  *See United States v. Gotti*, 794 F.2d 773, 777–78 (2d Cir. 1986); *accord United*

15   *States v. Patterson*, No. 1:19-cr-00230-DAD-BAM-1, 2020 WL 6200164, at *9 (E.D. Cal. Oct.

16   22, 2020).[6]  If the government fails to carry its burden, the court may nevertheless amend pretrial

17   release conditions to address concerns regarding flight risk and public safety that the defendant's

18   violations raised.  18 U.S.C. § 3148(b).  "Doubts regarding the propriety of release should be

19   resolved in favor of the defendant.  *Motamedi*, 767 F.2d at 1405; *see also United States v.*

20   *Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

21   ///

22

23   [5] When the government moves for revocation because the defendant committed a felony offense while on pretrial
     release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person
     will not pose a danger to the safety of any other person or the community."  18 U.S.C. § 3148(b).  The Government
24   does not argue that this presumption applies in this case.

25   [6] Ms. Mendez presumes that the government's burden is to prove public safety risk by clear and convincing evidence
     and flight risk by a clear preponderance of the evidence.  (ECF No. 205 at 4.)  These are the standards that apply at a
26   defendant's initial bail hearing pursuant to 18 U.S.C. § 3142.  *See Motamedi*, 767 F.2d at 1406; 18 U.S.C. § 3142(f).
     The Bail Reform Act is silent, however, as to the standard of proof at a revocation hearing pursuant to 18 U.S.C. §
27   3148.  Though the Ninth Circuit has yet to address this issue, the Second Circuit has persuasively adopted the
     preponderance of the evidence standard.  *See United States v. Damato*, No. 2:20-mj-00221-DJA-1, 2020 WL
28   2088100, at *2 (D. Nev. Apr. 29, 2020).

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b).  A district court reviews a magistrate judge's detention order de novo.  *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990).

**B.    Discussion**

Ms. Mendez does not dispute that the Government has met its burden under the first step of the § 3148(b) analysis – her admissions while under oath provide clear and convincing evidence that she violated multiple conditions of her release.[7]  She argues, however, that her violations do not make her a danger to the public or a flight risk.  (ECF No. 205 at 6.)  While her actions were "irresponsible and self-destructive," she has not made any attempts to flee or committed any serious offenses while on pretrial release.  (*Id.* at 6–7.)  Consequently, her continued detention prior to trial would be a disproportionate response to her conduct.  (*Id.* at 7.)

Ms. Mendez also asserts that the Court must base any revocation under § 3148(b)(2) on considerations of flight or danger to the community, even though the express language of § 3148(b)(2)(B) contains no such requirement.  (See ECF No. 205 at 5–6.)  The Government does not directly challenge this assertion, and its briefing appears to conflate the standards in § 3148(b)(2)(A)–(B).  Specifically, though the Government invokes the "unlikely to abide by any condition or combination of conditions" standard in § 3184(b)(2)(B), its broader contention appears to be that Ms. Mendez's inability to abide by her conditions makes her a threat to public safety and a risk of flight.  (*See id.* at 4.)  There are few cases that address this issue, and those that do arrive at different conclusions.  *Compare Gotti*, 794 F.2d at 776 n.3 ("It is not clear whether there is a significant difference between the findings required by paragraphs (A) and (B) of subsection (2).") *with Patterson*, 2020 WL 6200164, at *9 (rejecting the need to make a finding of dangerousness or risk of flight under § 3148(b)(2)(B)).  The Court finds persuasive the

---

[7] As discussed above, the Magistrate Judge also found that Ms. Mendez's positive drug test provided probable cause that she committed a crime while on pretrial release.  *Mendez*, 2023 WL 3931720, at *4 n.2 (citing 21 U.S.C. § 812(c)).  Ms. Mendez does not directly address this finding but alludes to the Government's purported policy of not prosecuting marijuana possession cases outside of federal land as a reason to view any offense as not significant. (ECF No. 205 at 7.)  The Court need not address the effect of any governmental non-enforcement policy on a finding under § 3148(b)(1)(A) because there is clear and convincing evidence that Ms. Mendez did not abide by the conditions of her release.

1   Second Circuit's assessment that the need to consider risk of flight and dangerousness is inherent

2   in the § 3148(b)(2)(B) analysis.  *See Gotti*, 794 F.2d at 776 n.3.  Therefore, its analysis will

3   incorporate an assessment of the following factors: (1) the nature and circumstances of the

4   charged offense; (2) the weight of the evidence; (3) Ms. Mendez's history and characteristics; and

5   (4) "the nature and seriousness of the danger to any person or the community that would be posed

6   by" Ms. Mendez's release.[8]  18 U.S.C. § 3142(g).

7       Ms. Mendez notes that she has lived in Central California her entire life and has strong

8   family connections – including her two sons, ages nine and eleven – in the area.  (ECF No. 205 at

9   6.)  The only blot on her criminal record apart from this case is a 23-year-old conviction for

10  driving on a suspended license.  (*Id.*)  Finally, Ms. Mendez emphasizes that she has abided by

11  most of the conditions of her release for the past two years – she has not possessed any weapons,

12  has obeyed travel restrictions, and has not committed any "significant" crimes.  (*Id.* at 6–7.)  The

13  Government counters that Ms. Mendez faces a particularly serious charge – one that carries a

14  presumption that pretrial detention is necessary.  (ECF No. 223 at 5.)  Additionally, her lack of

15  candor with Pretrial Services evinces a disregard for the Court's orders that makes her a public

16  safety threat and risk of flight.  (*Id.*)  To support this argument, the Government cites to two out-

17  of-circuit district court cases. (*Id.*)

18      First, in *United States v. Patch*, No. 18-cr-187-SM-3, 2021 WL 1080399, at *1 (D.N.H.

19  Mar. 1, 2021), *report and recommendation approved by* 2021 WL 1060204 (D.N.H. Mar. 19,

20  2021), the defendant was on pre-sentencing release after entering a guilty plea to drug distribution

21  charges.  Because the defendant had already been convicted, there was a statutory presumption of

22  detention pending sentencing.  *Id.* at *2.  During the pendency of the case, the defendant had

23  missed 32 calls for drug testing instructions and four drug tests.  *Id.*  She had also tested positive

24  for methamphetamine on eight occasions in a five-month period of time.  *Id.*  When pretrial

25  services confronted her about the positive tests, she denied any substance use, which fit into a

26  larger pattern of dishonesty with probation agents.  *Id.*

27

28

---

[8] As discussed below, the Court also finds that, separate from any considerations of dangerousness or risk of flight, there are additional conditions of release that do not rely on Ms. Mendez's good faith compliance to ensure public safety and her appearance in court.

1    Second, in *United States v. Ojo*, No. SAG-20-0369, 2020 WL 7707341, at *2 (D. Md.

2   Dec. 29, 2020), the district court found that the defendant's strong ties to Nigeria, substantial

3   evidence that he was guilty of the charged fraud scheme, and evidence that he had previously lied

4   to immigration officials indicated that no conditions of release could ensure public safety and his

5   return to court.  Specifically, the defendant faced charges that made him an "ongoing economic

6   danger to the community" and involved conduct in which he could continue to engage by

7   accessing the internet from his home.  *Id.*  His history of dishonesty made it unlikely that he

8   would refrain from such activity while awaiting trial.  *Id.*

9    While the Court has significant concerns about Ms. Mendez's lack of candor with Pretrial

10   Services, it finds *Patch* and *Ojo* to be inapposite.  First, unlike in *Patch*, Ms. Mendez has not yet

11   entered a guilty plea.  Additionally, while the defendant in *Patch* tested positive for

12   methamphetamine on eight occasions in five months, Pretrial Services' report alleges that Ms.

13   Mendez has tested positive for marijuana four times over the course of two years.  Any drug use

14   while on pretrial release raises concerns, but there is no indication that Ms. Mendez has a

15   substance abuse problem that makes her a danger to the community like the defendant in *Patch*.

16   Moreover, while the Court does not look favorably on her initial dishonesty to Pretrial Services, it

17   appears that Ms. Mendez eventually admitted to ingesting marijuana on multiple occasions.  In

18   fact, she made an in-court admission before the Magistrate Judge.  Ms. Mendez is also correct to

19   point out that her lack of candor relates far less directly to her risk of danger or flight than the

20   defendant's in *Ojo*.  (*See* ECF No. 225 at 4.)  First, given her strong connections to the area and

21   demonstrated record of attending court, there is little risk in Ms. Mendez's case that she will fail

22   to return to court.  Second, the nature of the danger the defendant posed in *Ojo* made it difficult

23   for the court to impose conditions that did not solely rely on the defendant's good faith

24   compliance.  That is not the case for Ms. Mendez.  To the extent that the Government believes

25   Ms. Mendez's history of dishonesty makes her inclined to participate in drug trafficking while

26   awaiting trial, there are conditions – for example, the use of a third-party custodian – that would

27   mitigate such a risk.

28   ///

Ms. Mendez's violations concern the Court.  There are, however, additional conditions of release that will ensure public safety and Ms. Mendez's return to court.  Specifically, the Court orders that Ms. Mendez reside with a third-party custodian during the pendency of this case.  Not only will this condition address concerns of flight and public safety, but it is also a condition that puts the responsibility of compliance out of Ms. Mendez's hands.  She will, therefore, have little choice but to abide by them.

### IV.

### Conclusion

1.      Ms. Mendez's motion for reconsideration of the Magistrate Judge's discovery order, (ECF No. 226), is denied;

2.      Ms. Mendez's motion to revoke the Magistrate Judge's order of detention, (ECF No. 205), is granted, subject to the imposition of the following conditions of release:

      a.      Ms. Mendez is ordered released at 9:00 a.m. on the business day following the date of signature on this order;

      b.      Ms. Mendez is ordered to abide by all conditions of release as originally set by the Magistrate Judge on March 29, 2021; and

      c.      In addition to her original conditions of release, Ms. Mendez is ordered to be placed in the custody of the third-party custodian identified by Pretrial Services.

IT IS SO ORDERED.

Dated:   August 9, 2023

_____
UNITED STATES DISTRICT JUDGE